Roxanne M. Wilson (SBN 94627)
rwilson@reedsmith.com
Jack R. Nelson (SBN 111863)
jnelson@reedsmith.com
Christine M. Neuharth (SBN 263509)
cneuharth@reedsmith.com
Nabil A. Bisharat (SBN 270305)
nbisharat@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:   213.457.8000
Facsimile:   213.457.8080

Attorneys for Defendant
Pittsburgh Penguins LP

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SPRING STREET COURTHOUSE

| | |
|---|---|
| FRED WEISS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LEMIEUX GROUP, L.P. d/b/a THE PITTSBURGH PENGUINS, a Pennsylvania limited partnership,<br><br>Defendants. | Case No.:  CV12-4585 CBM (JCx)<br><br>Date:        September 10, 2012<br>Time:       10:00 a.m.<br>Place:       Courtroom 2<br><br>**DEFENDANT PITTSBURGH PENGUINS LP'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT OF PLAINTIFF FRED WEISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[FED. R. CIV. PRO. 12(b)(6)]**<br><br>Complaint Filed:   May 25, 2012<br>Trial Date:             TBD<br>Discovery Cut-Off:  TBD<br><br>The Honorable Consuelo B. Marshall<br><br>[Filed concurrently with Request for Judicial Notice, Declaration of Jeremy Zimmer, Declaration of Roxanne M. Wilson and [Proposed] Order] |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on **September 10, 2012**, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012, Defendant Pittsburgh Penguins LP ("Penguins") will and hereby does move to dismiss the Complaint filed in this action against the Penguins by Plaintiff Fred Weiss ("Weiss"), and each claim for relief alleged therein against the Penguins.  The Penguins' Motion to Dismiss is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the operative Complaint and pleadings on file with the Court in this matter, all matters of which this Court may properly take judicial notice, and any other evidence or oral argument as the Court may consider in connection with this Motion.

This Motion to Dismiss is brought pursuant to Rule 12 of the Federal Rules of Civil Procedure on the ground that the Complaint fails to state facts sufficient to constitute any claim for relief against the Penguins.  Although Weiss bases his two claims for relief for violation of the Telephone Consumer Protection Act and breach of contract on his allegation that he signed up to receive a *maximum* of *three* text messages per week, a review of the plain language of the full set of the Terms and Conditions to which he agreed confirms that his consent was not so limited. Importantly, one of the initial and essential terms provides that "[a]lerts go out after every game," and the publicly available and judicially-noticeable Penguins' 2011-2012 game schedule demonstrates that the team played more than three games per week at times.  In addition, the asserted limitation to three messages a week on which Weiss relies appears only in a clause in a footnote to the full Terms and Conditions that follows the agreement to receive a text after every game.  That clause itself follows, and thus is plainly subservient to, the following language:  "By subscribing, you consent to receiving, from time to time, *further* text messages from us which may include offers from us, our affiliates and partners."  Thus, the Terms and Conditions

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

that Weiss purports to place at issue constitute express consent to receive a text alert after every Penguins game, *plus* up to three additional text messages per week. Because Weiss received exactly what he consented to, and allegedly contracted to receive, there was no violation of the Telephone Consumer Protection Act or breach of any alleged contract by the Penguins.  Accordingly, the Complaint should be dismissed for failure to state a claim against the Penguins upon which relief can be granted.

This Motion is made following the conference of the Penguins' counsel with Weiss' counsel pursuant to Local Rule 7-3 which took place on July 19 and July 25, 2012.  *See* Declaration of Roxanne M. Wilson, filed concurrently.


DATED:  July 26, 2012

REED SMITH LLP
Roxanne M. Wilson
Jack R. Nelson
Christine M. Neuharth
Nabil A. Bisharat


By:    /S/ Roxanne M. Wilson
　　　　Roxanne M. Wilson
　　　　Attorneys for Defendant
　　　　Pittsburgh Penguins LP

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND .......................................................................... 2

III.  LEGAL STANDARD ..................................................................................... 5

IV.  ARGUMENT................................................................................................... 6

    A.  Weiss' Interpretation Of The Terms Is Inherently Unreasonable and Contradicts the Purpose of the Pens Mobile Club. ................................................................................................................ 6

        1.  Weiss' Interpretation of the Terms and Conditions Is Unreasonable Given the Unambiguous Scope of His Consent. ................................................................................................ 8

        2.  Weiss' Interpretation of the Terms and Conditions Contravenes the Purpose of the Pens Mobile Club. ...................... 10

        3.  Weiss' Subjective Intent Is Irrelevant to Interpretation of the Objective Meaning of the Terms and Conditions.................... 11

    B.  Weiss' Allegations Do Not Meet All of the Necessary Elements of a Breach of Contract Cause of Action. ............................... 12

        1.  Weiss Has Failed to Allege All of the Essential Terms of the Alleged Contract With the Penguins. ....................................... 13

        2.  Because the Terms and Conditions Contemplate Transmission of More Than Three Texts Per Week, Weiss Cannot Show Any Breach...................................................... 13

        3.  Weiss' Allegations Do Not Show the Penguins' Purported Breach Caused Him to Incur Any Cell Phone Charges or Other Harm................................................................. 14

    C.  Weiss Fails To Plead Facts Supporting A Claim Under The TCPA................................................................................................... 16

        1.  Weiss' Claim for Violation of the Telephone Consumer Protection Act Fails Because Weiss Expressly Consented to Receive All of the Texts He Was Sent. .................. 16

V.  CONCLUSION ............................................................................................. 19

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- i -

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Selling Source, LLC,*
2009 WL 4884471 (N.D. Ill. 2009) ....................................................... 15

*Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,*
988 F.2d 1157 (Fed. Cir. 1993) ............................................................. 5

*Appalachian Ins. Co. v. McDonnell Douglas Corp.,*
214 Cal.App.3d 1 (1989) ........................................................................ 7

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................. 5, 6

*Automatic Poultry Feeder Co. v. Wedel,*
213 Cal. App. 2d 509 (1963) ......................................................... 14, 15

*Beck v. Am. Health Group Int'l, Inc.,*
211 Cal. App. 3d 1555 (1989) ........................................... 9, 10, 11, 12

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955 (2007) .................................................... 6

*Brant v. Cal. Dairies,*
Inc., 4 Cal. 2d 128 (1935) ..................................................................... 11

*Britz Fertilizers, Inc. v. Bayer Corp.,*
665 F. Supp. 2d 1142 (E.D. Cal. 2009) ................................................ 9

*Clegg v. Cult Awareness Network,*
18 F.3d 752 (9th Cir. 1994) .................................................................. 6

*Consolidated World Investments, Inc. v. Lido Preferred, Ltd.,*
9 Cal. App. 4th 373 (1992) .................................................................... 8

*Constr. Protective Servs., Inc. v. TIG Specialty Ins.,*
29 Cal. 4th 189 (2002) ............................................................. 12, 13, 14

*Dumas v. Kipp,*
90 F.3d 386 (9th Cir. 1996) .................................................................. 6

*Elvin v. Am. Home Mortgage Investment Trust,*
2009 WL 839930 (E.D. Cal. 2009) .................................................... 7, 9

*George v. Automobile Club of Southern California,*
201 Cal. App. 4th 1112 (2011) ............................................................ 11

*Gilmore v. Lycoming Fire Ins. Co.,*
55 Cal. 123 (1880) ................................................................................ 13

*Greater Middleton Assoc. v. Holmes Lumber Co.,*
222 Cal.App.3d 980 (1990) .................................................................... 7

*Gutierrez v. Barclays Group,*
2011 WL 579238 (S.D. Cal. 2011) ................................................. 17, 18

*Harris v. Klure,*
205 Cal.App.2d 574 (1962) ............................................................. 8, 11

*Ileto v. Glock Inc.,*
349 F.3d 1191 (9th Cir. 2003) .............................................................. 5

*In re Crow Winthrop Operating Partnership v. Jamboree LLC,*
241 F.3d 1121 (9th Cir. 2001) .............................................................. 7

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ...................................................................16

*Jones v. Bock*,
    549 U.S. 199 , 127 S.Ct. 910 (2007).......................................................16

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) .....................................................................5

*Monaco v. Bear Stearns Residential Mortgage Corp.*,
    554 F.Supp.2d 1034 (C.D. Cal. 2008) ......................................................7

*Moore v. Wood*,
    26 Cal.2d 621 , (1945) ...............................................................................7

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) .....................................................................5

*Neitzke v. Williams*,
    490 U.S. 319, 109 S. Ct. 1827 (1989).......................................................5

*Oceanside 84, Ltd. v. Fidelity Federal Bank*,
    56 Cal.App.4th 1441 (1997) .............................................................7, 8, 10

*Pimental v. Google, Inc.*,
    2012 WL 691784 (N.D. Cal. 2012) .........................................................16

*Progressive West Ins. Co. v. Yolo County Superior Court*,
    135 Cal. App. 4th 263 (2005) ............................................................12, 13

*Reserve Ins. Co. v. Pisciotta*,
    30 Cal.3d 800 (1982) ...............................................................................11

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) .....................................................................5

*Sanchez v. Bally's Total Fitness Corp.*,
    68 Cal.App.4th 62 (1998) ..........................................................................7

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...................................................................16

*Shupe v. JP Morgan Chase Bank of Arizona*,
    2012 WL 1344820 (D. Ariz. 2012)..........................................................16

*So. Cal. Edison Co. v. The Superior Court of Los Angeles County*,
    37 Cal.App.4th 839 (1995) .....................................................................7, 8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .....................................................................6

*Telesaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir. 2010) .....................................................................6

*Thrasher-Lyon v. Illinois Farmers Insurance Co.*,
    2012 WL 983774 (N.D. Ill. March 20, 2012)..........................................16

*Transamerica Ins. Co. v. Sayble*,
    193 Cal. App. 3d 1562 (1987) ...................................................................8

*Trident Center v. Connecticut General Life Ins.*,
    847 F.2d 564 (9th Cir. 1988) .....................................................................8

*Wall St. Network, Ltd. v. N.Y. Times Co.*,
    164 Cal. App. 4th 1171 (2008) ................................................................12

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

*Westways World Travel v. AMR Corp.*,
   182 F. Supp. 2d 952 (C.D. Cal. 2001) ................................................................ 12

*Winet v. Price*,
   4 Cal. App. 4th 1159 (1992) ................................................................ 11, 12

**Statutes**

47 U.S.C. § 227 ................................................................................................ 2

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................ 16

Cal. Civ. Code § 1638 ................................................................ 7

Cal. Civ. Code § 1641 ................................................................ 7

Cal. Civ. Proc. Code § 1858 ................................................................ 8

**Rules**

Fed R. Civ. Pro. 12(b)(6) ................................................................ 5, 9, 16, 18

**Regulations**

47 C.F.R. § 64.1200(a)(1) ................................................................ 16

**Other Authorities**

Merriam-Webster Online Dictionary, http://www.merriam-
   webster.com/dictionary/further (last visited July 5, 2012) ........................... 9

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

US_ACTIVE-109784530.13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff Fred Weiss ("Weiss") is a subscriber to the National Hockey League ("NHL") Pittsburgh Penguins' "Pens Mobile Club," a program under which fans of the team (known to fans as the "Pens") who want to "stay connected with the Pens at all times," sign up to receive a variety of texts from the team on their cell phones. Weiss alleges in this putative class action Complaint against the Pittsburgh Penguins LP (the "Penguins"), however, that when he signed up for the program there was an express limit on the total number of texts that he or any member of the putative class would receive from the team in any given week, and he contends that the Penguins periodically exceeded that alleged "limit."  But the plain language of the Terms and Conditions of the Pens Mobile Club (the "Terms") establish that the theories of liability alleged in Weiss's Complaint have no merit.  Weiss improperly attempts to limit the scope of his consent to receive texts by isolating a single sentence at the end of a footnote to the Terms and characterizing it as the full scope of his consent to receive texts from the team.  Weiss fails to provide the Court with the full Terms, however, and a full review of the Terms, which are judicially-noticeable, plainly illustrates that the scope of Weiss' consent is not limited as he contends.

Weiss' inaccurate characterization of the plain language of the Terms cannot support his claims for either breach of contract or violation of the Telephone Consumer Protection Act ("TCPA").  Weiss' claim for relief for breach of any alleged contract fails because (1) the text messages Weiss purportedly received fall squarely within the Terms to which Weiss agreed, and (2) Weiss's interpretation of the Terms is not reasonable under the well-established rules of contract interpretation.  Equally fatal to Weiss' breach of contract claim is the fact that Weiss has not alleged that the supposed breach caused him – or the putative class - anything but purely speculative harm.  Neither his conclusory allegation that he "suffered damages," nor his unsupported contention that he and/or unspecified Class members *may have* suffered

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

damages due to charges being imposed on them under their wireless service contracts for the Penguins' texts, can satisfy the damages element of his breach of contract claim because the terms regarding text charges in the operative wireless service contracts have not been pled.

Weiss's claim for relief for violation of the TCPA fails because the Terms establish, unequivocally, that Weiss consented expressly to receive all of the texts that he alleges the Penguins sent him.

As is explained below, Weiss will be unable to cure these fatal flaws in his Complaint. The Penguins therefore respectfully request that Weiss' Complaint be dismissed, in its entirety, and with prejudice.

## II.   FACTUAL BACKGROUND

On May 25, 2012, Weiss filed his putative Class Action Complaint for: (1) Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227; and (2) Breach of Contract. The Complaint focuses on a service that the Penguins[1] franchise provides to its fans – a program known as the Pens Mobile Club, under which fans sign up to receive texts on their mobile phone that provide them with instant information concerning, among other things, games, player trades and other "breaking news" about the team, as well as promotional messages and special offers from the team and/or its affiliates. Compl. ¶ 1. Penguins' fans can enroll by submitting their cell phone numbers through the Penguins' website, or by texting the word "PENS" from their cell phones to a specified short code number. *Id*. ¶ 15. The Terms and Conditions of the program are set forth on the Penguins' website, located at http://penguins.nhl.com/club/page.htm?id=57281. *Id*.; *see also* Exhibit A [Pens

---

[1] The Complaint originally named Lemieux Group, L.P. d/b/a The Pittsburgh Penguins, a Pennsylvania limited partnership, ("Lemieux") as the only Defendant. However, Lemieux functions merely as a holding company of Pittsburgh Penguins, LP and does not do business under the name "The Pittsburgh Penguins." Thus, the moving Defendant is Pittsburgh Penguins, LP. This misnomer was corrected by the filing of a joint Stipulation to Substitute Party-Defendant [Dkt. 14].

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

Mobile Club Terms and Conditions], attached to Declaration of Jeremy Zimmer in Support of Request for Judicial Notice ("RJN").

Weiss bases his lawsuit on a theory that the Terms "limit the number of text message calls to each consumer to no more than three (3) per week."  Compl. ¶ 2.  He makes this assertion by referencing only a discrete portion of the Terms, which provides, "[b]y subscribing, you consent to receiving, from time to time, further messages from us which may include offers from us, our affiliates and partners. . . . Maximum of 3 messages a week."  *Id*. ¶ 16.  In truth, however, the Terms are broader than Weiss attempts to imply by quoting only this isolated provision in his Complaint. The full Terms, which set forth the full scope of Weiss' consent, and thus the contract that he alleges was formed between him and the Penguins, are reproduced here for the Court's ease of reference:

> Want to stay connected with the Pens at all times? Sign up to receive free text message alerts! Whether there is a big trade, breaking news, or special offers - you will find out first.
>
> <u>Alerts go out after every game</u> and include the 3 stars of the game. There is no charge to receive Pens Text Alerts. Message and Data Rates May Apply.*
>
> * Your carrier's standard messaging and data rates apply to all SMS correspondence. Other charges may apply. By subscribing, <u>you consent to receiving, from time to time, *further* text messages from us which may include offers from us, our affiliates and partners</u>.  Available on participating carriers. <u>Maximum of 3 messages a week</u>. **To end this service, text "STOP" to 32623. For help text "HELP" to 32623 or email customerservice@pittsburghpenguins.com or call 412-642-1300.**

RJN, Exh. A (underline and italics emphasis added; bold text in original).

Weiss concedes that, "on or about March 11, 2012, [he] subscribed to receive . . . text message alerts . . . from Defendant by texting the word 'PENS' from his cellular telephone to Defendant's short code, 32623."  Compl. ¶ 18.  He contends,

US_ACTIVE-109784530.13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    however, that he only "subscribed to receive a maximum of three text message alerts

2    per week" [*id.*] and that the Penguins exceeded the limit of his consent and violated

3    the Terms by sending him five texts during the first week of his subscription

4    (March 11 –17, 2012) and four texts the following week (March 18 –24, 2012).  *Id.*

5    ¶¶ 19-20.  Specifically, Weiss alleges that he received texts on the following days:

6    March 11 (2 messages), 13 (1), 15 (1), 17 (1), 18 (1), 20 (1), 22 (1), and 24 (1), for a

7    total of nine texts - five during the week of March 11-17 and four the following week.

8    *Id.* ¶¶ 19-20.[2]

9        Because Weiss admits that he consented to receive at least three texts per week

10   for those two weeks [*see id.* ¶ 18], the Complaint thus asserts implicitly that only three

11   of these nine texts sent Weiss received – two in the first week and one the next – were

12   outside of the scope of Weiss's consent.  The Complaint alleges that the Penguins

13   violated the Telephone Consumer Protection Act ("TCPA") and breached a contract

14   with Weiss by sending these three allegedly unconsented-to texts.  Compl. ¶¶ 31-43.[3]

15       The Terms, however, make plain that the scope of consent given by any fan that

16   signs up for the Pens Mobile Club is broader than Weiss alleges.   First, the Terms

17   expressly state that text "[a]lerts go out after every game."  RJN, Exh. A.  The

18   judicially-noticeable 2011-2012 published game schedule for the Penguins (available

19   at all times to fans and the public on the Penguins' pages on the NHL's website),

20   shows that the Penguins were scheduled to, and did, play games more than three times

21   in one week more than once during their 2011-2012 regular season, and moreover

22   played games on all but one of the day on which Weiss alleges that he received texts

23

24   ---

      [2] Weiss does not describe the subject or content of any of the nine texts.

25   [3] Weiss does not describe the terms of his wireless contract or any wireless contract(s) purportedly

26   belonging to other supposed Class members, but he contends nonetheless that he "and the other
      members of the Class have suffered actual damages by, *inter alia*, having to pay their respective

27   wireless carriers for the text messages where applicable. . . ."  Compl. ¶ 34; *see also id.* ¶ 13.  Weiss
      is no more specific with respect to his breach of contract claim, asserting simply that he "and the

28   other members of the Class suffered damages in an amount to be proven at trial."  *Id.* ¶ 43.

US_ACTIVE-109784530.13

from the team.  *See* RJN, Exh. B [Penguins 2011-2012 Game Schedule].[4]  Second, the Terms state that fans who sign up for the Mobile Club also "consent to receiv[e], from time to time, further text messages" from the Penguins and/or their affiliates regarding promotions.  RJN, Exh. A.  Plainly, these promotional messages are <u>in addition</u> to game alert texts.  The Terms explain that any promotional messages - and only those – will be sent no more than three times per week.  *Id.*

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rules of Civil Procedure, Rule 12(b)(6) tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory, or where it presents a cognizable legal theory yet fails to plead essential facts to support that theory.  *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S. Ct. 1827, 1832 (1989); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  The purpose of a Rule 12(b)(6) motion to dismiss is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity."  *Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

While all material factual allegations in a Complaint are taken as true, "*conclusory* allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (italics added).  Indeed, the United States Supreme Court confirmed the requirement that pleadings must contain more than labels and unsupported conclusions, and emphasized that conclusory allegations are *not* entitled to be assumed true.  *See Ashcroft v. Iqbal*, 556

---

[4] Weiss alleges that he received messages on March 11, 13, 15, 17, 18, 20, 22 and 24.  Complaint, ¶¶ 19-20.  Except for March 13, the Penguins played a game every one of those days.  See RJN, Exh. B.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

U.S. 662, 677-79, 129 S.Ct. 1937, 1949-52 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).  A court is not required to "accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, *supra*, 556 U.S. at 678 (alteration in original; internal quotation marks omitted).  A complaint must "state a claim to relief that is plausible on its face." *Twombly*, *supra*, 550 U.S. at 570.  This means that the complaint must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  In addition, a court need not accept as true allegations contradicted by matters properly subject to judicial notice or by exhibits attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the Court decides to dismiss a complaint, it must also decide whether to grant leave to amend, and "[a] district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency . . . or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  Thus, when it would be futile to amend the complaint's deficiencies, dismissal may be ordered *with prejudice*. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## IV.    ARGUMENT

### A.    Weiss' Interpretation Of The Terms Is Inherently Unreasonable and Contradicts the Purpose of the Pens Mobile Club.

Under the established rules of contract interpretation, Weiss' view of the Pens Mobile Club Terms and Conditions cannot be adopted by the Court.  "When a dispute

US_ACTIVE-109784530.13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

arises over the meaning of contract language, the first question to be decided [by the court] is whether the language is reasonably susceptible to the interpretation urged by the party.  If it is not, the case is over." *Oceanside 84, Ltd. v. Fidelity Federal Bank*, 56 Cal.App.4th 1441, 1448 (1997).  "Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself or from extrinsic evidence of the parties' intent." *So.  Cal. Edison Co. v. The Superior Court of Los Angeles County*, 37 Cal.App.4th 839, 848 (1995) (internal citations omitted).  Generally, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638; *see also Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal.App.3d 1, 11 (1989).  "Whether a contract provision is clear and unambiguous is a question of law, not fact." *Sanchez v. Bally's Total Fitness Corp.*, 68 Cal.App.4th 62, 69 (1998).  And, if the contract terms are clear and unambiguous, a court need not consult extrinsic evidence in interpreting it.  *Greater Middleton Assoc. v. Holmes Lumber Co.*, 222 Cal.App.3d 980, 989-90 (1990) ("It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns on extrinsic evidence."); *In re Crow Winthrop Operating Partnership v. Jamboree LLC,* 241 F.3d 1121, 1124 (9th Cir. 2001) (same).  Further, "[r]esolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *Elvin v. Am. Home Mortgage Investment Trust*, 2009 WL 839930, *15 (E.D. Cal. 2009) (citing *Monaco v. Bear Stearns Residential Mortgage Corp.,* 554 F.Supp.2d 1034, 1040 (C.D. Cal. 2008).

The California Civil Code provides that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641; *Moore v. Wood*, 26 Cal.2d 621, 630, (1945) ("The meaning of a written instrument is not to be determined by isolating one term used by the parties and defining it without reference to other language of the contract."); *Appalachian, supra*, 214 Cal.App.3d at 11 ("An interpretation which

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

renders part of the instrument to be surplusage should be avoided."); *Trident Center v. Connecticut General Life Ins.*, 847 F.2d 564, 566-67 (9th Cir. 1988) ("The normal rule of construction, of course, is that courts must interpret contracts, if possible, so as to avoid internal conflict.") (applying California law); *see also* Cal. Civ. Proc. Code § 1858.  A "contract must be construed as a whole, without giving a distorting emphasis to isolated words or phrases."  *Transamerica Ins. Co. v. Sayble*, 193 Cal. App. 3d 1562, 1566 (1987).  Overall, the court should "favor an interpretation [of the contract] which gives effect to the main apparent purpose of the contract."  *Harris v. Klure*, 205 Cal.App.2d 574, 578 (1962).

### 1.  Weiss' Interpretation of the Terms and Conditions Is Unreasonable Given the Unambiguous Scope of His Consent.

In the instant case, Weiss focuses on a single statement in the Pens Mobile Club Terms and Conditions, mistakenly representing that the only relevant and/or operative provision of the Terms with respect to him is that "Defendant would transmit a '[m]aximum of 3 messages a week."  Compl. ¶ 38.  But, when taken as a whole, as they must be, the Terms are not "reasonably susceptible to the interpretation urged by" Weiss.  *See Oceanside 84, Ltd. v. Fidelity Federal Bank*, 56 Cal. App. 4th 1441, 1448 (1997) (citing *Consolidated World Investments, Inc. v. Lido Preferred, Ltd.,* 9 Cal. App. 4th 373, 379 (1992) (Contract was not reasonably susceptible to appellant's construction that escrow period does not begin to run until appellant obtains a loan commitment on the property where contract plainly provided "[t]he anticipated period of escrow shall be 60 days *from the date of this Agreement*"; appellate court held "[t]o assert the phrase 'from the date of this Agreement' really means 'from the date [appellant] obtains a loan commitment on the property' is to flatly contradict the terms of the agreement.") (emphasis in original)); *see also So. Cal. Edison*, *supra*, 37 Cal.App.4th at 848.[5] *Sayble*, *supra*, 193 Cal. App. 3d at 1566.

---

[5] In interpreting the terms of the alleged contract in the instant case, this Court need not look to extrinsic evidence because the judicially-noticeable Terms speak for themselves in refuting

US_ACTIVE-109784530.13

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    To start, the fundamental problem with Weiss's proposed interpretation is that

2  the Terms provide explicitly that "[a]lerts go out after *every game*."  RJN, Exh. A

3  (emphasis added).  The plain language of the Terms thus means, unequivocally, that

4  Plaintiff agreed to receive *at least* as many "alerts" via text as there were games in a

5  given week.  The next insurmountable problem for Weiss is that the Terms establish

6  that, beyond *alerts* via text "after every game," he "consent[ed] to receive" up to three

7  additional texts containing promotional "*messages*."  RJN, Exh. A ("By subscribing,

8  you consent to receiving, from time to time, *further* text *messages* from us which may

9  include offers from us, our affiliates and partners.") (emphasis added).   The ordinary

10  and plain meaning of the term "further" is "in addition."[6]  Merriam-Webster Online

11  Dictionary, http://www.merriam-webster.com/dictionary/further (last visited July 5,

12  2012); *see Beck v. Am. Health Group Int'l, Inc.*, 211 Cal. App. 3d 1555, 1562 (1989).

13  The use of this qualifier thus presupposes that the promotional messages the Penguins

14  may send are "in addition" to others.  The Terms identify those other texts as the alerts

15  sent after "every game."  In short, the Terms make plain to all prospective Pens

16  Mobile Club members that, by signing up with the Club, they are consenting to

17  receive a text alert "after every game," *plus* up to three "further" promotional text

18  messages a week.[7]  Weiss has not alleged that he received more than three

19  promotional (non-game alert) messages via text in any given week.

20    Nor can Weiss do so.  The nail in the coffin of Weiss' claims in the Complaint

21  is the Penguins' published game schedule.  It establishes that the Penguins play four

---

23  Plaintiff's erroneous interpretation.  Accordingly, it is appropriate for the Court to determine the
meaning of the contract alleged on this Rule 12(b)(6) Motion to Dismiss.  *See Elvin*, 2009 WL
24  839930, *15.

25  [6] "[T]o determine the common meaning of a word 'a court typically looks to dictionaries.'"  *Britz
Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1160 (E.D. Cal. 2009).

26  [7] By using the word "alerts" to describe texts with game reports, but the word "messages" to
27  describe texts with promotional content, the Terms create a meaningful distinction between two
types of texts, further distancing game "alerts" from the clause "[m]aximum of 3 messages a week."

US_ACTIVE-109784530.13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

games during some weeks in the NHL season, and that the team played three games during one of the weeks in which Weiss alleges that he received texts, and four games in the other week that he references in his Complaint.  Compare Complaint, ¶¶ 19-20 and RJN, Exh. B.  Specifically, Weiss alleges that he received five texts during the three-game week and four texts during the four-game week.  *Id.*   Because he acknowledged and agreed that the Penguins would send him a text alert "after every game," Weiss has plead himself into a corner.  The receipt of four texts during a week in which the Penguins played four games squares precisely with the Terms' promise that a text alert goes out "after every game."  And the receipt of five texts during a week in which the Penguins played three games fits within the dual commitment that an alert will go out after every game and beyond those no more than three promotional texts will go out during any given week.  In a three-game week that means up to six texts may be sent.  Weiss admits receiving only five.

The Terms are not reasonably susceptible to Weiss' interpretation of what he agreed to receive.  Plainly, Weiss agreed to receive more than three text messages during any week in which the Penguins play.  This ends the inquiry, and Weiss cannot prevail on his breach of contract cause of action because it is grounded on this fatally flawed construction.  *See Oceanside 84, supra*, 56 Cal. App. 4th at 1448.

### 2.   Weiss' Interpretation of the Terms and Conditions Contravenes the Purpose of the Pens Mobile Club.

Weiss' erroneous interpretation also contravenes the purpose of the Pens Mobile Club program.  The Terms provide that the Mobile Club's purpose is for fans of the Penguins to "stay connected with the Pens at all times."  RJN, Exh. A. Weiss admits in his Complaint that under the program, "consumers sign up to receive text message alerts" "related to [the] Pittsburgh Penguins hockey team", including "notice . . . of player trades, breaking news, and special offers."  Compl. ¶¶ 1, 14, 16. Given that the preferred interpretation of the alleged contract is to "give[] effect to the main apparent purpose of the contract," Weiss's assertion that "connected at all times"

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   really means "connected up to three times per week - but no more" is utterly

2   nonsensical. *Harris, supra,* 205 Cal. App. 2d at 578.  Penguins' games are the

3   foundation of the franchise's existence and the most important aspect of the team to

4   fans.  It defies reason that a fan who agrees that they want to "stay connected" to the

5   team in reality wants to be "disconnected" whenever there are more than three games

6   in a week, or during a week when the number of games played and team events that

7   are "breaking news," such as a big player trade, combine to exceed three.

8        The court in *George v. Automobile Club of Southern California,* 201 Cal. App.

9   4th 1112 (2011), rejected an interpretation of an insurance policy which was in

10  contravention of the rest of the terms.  There, the plaintiff attempted to allege that the

11  parties agreed that he would always be paid out $25,000 as the value of his insured

12  vehicle upon an event of loss.  The court held that "the policy itself . . . preclude[d]

13  Plaintiff's allegations as a matter of law." *Id.* at 1128.  In direct contradiction of

14  Plaintiff's interpretation, "[t]he declarations page, when read together with the rest of

15  the policy, unambiguously provides that in the event of a total loss, the policy will pay

16  the actual cash value of the car *up to $25,000,* less the deductible." *Id.* (emphasis in

17  original).  The court held that "Plaintiff's allegations would render the operative

18  provisions of the policy nonsensical." *Id.* at 1129 (citing *Reserve Ins. Co. v. Pisciotta,*

19  30 Cal.3d 800, 807 (1982) ("Courts will not adopt a strained or absurd interpretation

20  in order to create an ambiguity where none exists.")).  Here, the Court should likewise

21  reject Weiss' nonsensical interpretation of the Terms as a matter of law.

22       **3.    Weiss' Subjective Intent Is Irrelevant to Interpretation of the**

23             **Objective Meaning of the Terms and Conditions.**

24       Because courts construe the terms of a contract according to their objective,

25  plain meaning, "evidence of the undisclosed subjective intent of the parties is

26  irrelevant to determining the meaning of contractual language." *Winet v. Price,* 4 Cal.

27  App. 4th 1159, 1166 (1992) ("It is the outward expression of the agreement, rather

28  than a party's unexpressed intention, which the court will enforce.") (citing *Brant v.*

US_ACTIVE-109784530.13

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Cal. Dairies, Inc.*, 4 Cal. 2d 128, 133 (1935)); *see Beck v. Am. Health Group Int'l, Inc.*, *supra*, 211 Cal. App. 3d at 1562 ("The words of a written instrument are generally to be understood in their ordinary and popular sense. . . .  The objective intent as evidenced by the words of the instrument, not the parties' subjective intent, governs our interpretation. . . .  [T]he outward manifestation or expression of assent is controlling, and . . . what the language of an [instrument] means is 'a matter of interpretation for the courts and not controlled in any sense by what either of the parties intended or thought its meaning to be. . . .'") (internal citations omitted).

Subjective intent is irrelevant where, as here, the "objective intent" is plainly "evidenced by the words of the instrument." *Beck v. Am. Health Group Int'l, Inc.*, 211 Cal. App. 3d 1555, 1562 (1989); *Winet,* 4 Cal. App. 4th 1159, 1166 (1992).  Thus, to the extent Weiss may argue that he can plead that he subjectively believed that he was consenting to receive no more than three texts per week when he subscribed to the Pens Mobile Club, the language of the Terms objectively shows that he did not limit his consent in this manner.  An amendment of the Complaint would be futile under these circumstances.

## B. Weiss' Allegations Do Not Meet All of the Necessary Elements of a Breach of Contract Cause of Action.

To state a breach of contract claim, a plaintiff must assert: (1) the existence of a contract; (2) Plaintiff's performance or excuse for nonperformance; (3) breach; and (4) that the breach caused Plaintiff's harm.  *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008); *see also Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 963 (C.D. Cal. 2001).  "To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." *Progressive West Ins. Co. v. Yolo County Superior Court*, 135 Cal. App. 4th 263, 270 (2005).  Alternatively, "a plaintiff may plead the legal effect of the contract rather than its precise language." *Constr. Protective Servs., Inc. v. TIG Specialty Ins.*, 29 Cal. 4th 189, 198-99 (2002).  However, if a plaintiff

US_ACTIVE-109784530.13

elects to plead the contract's "legal effect" rather than its precise language, he or she is required to plead the contract's *essential terms, including the terms that have been breached*." *Id.* at 199 (emphasis added)*; see also Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880).

### 1. Weiss Has Failed to Allege All of the Essential Terms of the Alleged Contract With the Penguins.

In his Complaint, Weiss concludes that "[b]y registering to receive Defendant's text message alerts and providing their cellular phone numbers to do so, Plaintiff and the Class entered into valid and enforceable contracts with Defendant, the terms of which are set forth in Defendant's terms and conditions." Compl. ¶ 39. Assuming Weiss and the Penguins have an enforceable contract, Weiss fails to plead the terms of the alleged contract, as he must. *See Progressive*, 135 Cal.App.4th at 270. Notwithstanding Weiss' allegation that "[t]he terms and conditions governing Defendant's text message alerts provide, in relevant part, that Defendant would transmit a '[m]aximum of 3 messages a week" [Compl. ¶ 38], he has not pled all of the alleged contract's "essential terms." *Constr. Protective Servs.,* 29 Cal.4th at 198-99. Weiss concedes that the Terms contain additional provisions. *See* Compl. ¶¶ 38 ("The terms and conditions . . . provide, *in relevant part* . . . ."), 39 ("[T]he terms . . . are set forth in Defendant's terms and conditions.") (emphasis added). As described above, the Terms are broader than Weiss represents to the Court. *See* RJN, Exh. A. Weiss' cause of action for breach of contract is deficient for this reason and, therefore, should be dismissed.

### 2. Because the Terms and Conditions Contemplate Transmission of More Than Three Texts Per Week, Weiss Cannot Show Any Breach.

Weiss alleges that "Defendant's failure to limit the number of text messages it transmitted to Plaintiff . . . to no more than three each week constitutes a material breach of the terms and conditions governing Defendant's text message alerts and its agreement with Plaintiff." Compl. ¶ 42. As shown, however, the Terms provide, first

US_ACTIVE-109784530.13

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

and foremost, that "[a]lerts go out after every game."  RJN, Exh. A.  The Terms next provide that subscription to the Pens Mobile Club encompasses consent to receiving "further text messages" in addition to the game alerts, which will "include offers from [the Penguins and their] affiliates and partners."  *Id.*  Only after this second statement do the Terms reference a "[m]aximum of 3 messages a week."  *Id.*  Because the Penguins' schedule shows that the team played games on all but one of the days on which Weiss alleges he received texts [*see* RJN, Exh. B], Weiss has not plead a breach of the Terms' limit of three promotional messages per week.

### 3.     Weiss' Allegations Do Not Show the Penguins' Purported Breach Caused Him to Incur Any Cell Phone Charges or Other Harm.

Weiss has also failed to show that the purported breach caused him any harm, as he must.  He alleges, "[a]s a result of Defendant's breach of its agreements with Plaintiff and the Class, Plaintiff and the other members of the Class suffered damages in an amount to be proven at trial."  Compl. ¶ 43.  Weiss does not offer any detail about the source of these purported damages or how they were supposedly incurred.  Weiss' conclusory allegation that he "suffered damages" in an unspecified amount is purely speculative and is insufficient to withstand a motion to dismiss.  *See Automatic Poultry Feeder Co. v. Wedel*, 213 Cal. App. 2d 509, 516 (1963) ("Damages which are uncertain, contingent, or speculative cannot be recovered . . . .  A reason given for the rule is that uncertain or speculative damages are not susceptible of the exactness of proof that is required to fix a liability.").

Elsewhere in his Complaint, Weiss claims that he and the other Class members "have suffered actual damages by, *inter alia*, having to pay their respective wireless carriers for the text messages, <u>where applicable</u>."  Compl. ¶ 34 (emphasis added); *see also* ¶ 3 ("By exceeding the authorized limits on weekly text message calls made to Plaintiff, . . . Defendant has caused Plaintiff . . . actual harm, not only because [he was] subjected to the aggravation that necessarily accompanies the invasion of privacy caused by unsolicited text message calls, but also because *consumers frequently have*

US_ACTIVE-109784530.13

1    *to pay their cell phone service providers for the receipt of such wireless calls*.")
2    (emphasis added).  To the extent Weiss intends these allegations to constitute his
3    alleged damages for breach of contract, he has still failed to meet the fourth element of
4    his breach of contract cause of action – resulting harm.

5        Weiss has not pled the terms of his wireless contract and, as such, has made no
6    showing concerning what text messages he would be charged for, if any, or the
7    amount he was purportedly charged.  As the District Court of the Northern District of
8    Illinois observed in *Abbas v. Selling Source, LLC*, 2009 WL 4884471 (N.D. Ill. 2009),
9    there is a wide "variety of cellular telephone plans available," including those with
10   "arrangements wherein employers and other third parties reimburse the actual user of
11   the telephone at issue."  *See id.* at *2, n.2 (Plaintiff "argues that he alleged that he and
12   others were charged for messages received" by "simply stat[ing] that consumers have
13   to pay for SMS messages received.  It is far from clear that [Plaintiff] alleges that he is
14   one of those consumers.") (internal citations omitted).  Neither this Court nor the
15   Penguins can speculate as to the type and terms of any alleged wireless contract Weiss
16   or any other supposed class member purportedly has.

17       In addition, Weiss does not specifically allege that he was *actually charged* by
18   his wireless carrier for *any* of the text messages, let alone any of the three that were
19   purportedly in excess of the Terms.  In fact, the qualifier "where applicable" [Compl.
20   ¶ 34] suggests that Weiss and/or at least some of the putative class members were _not_
21   charged and therefore have suffered _no damages_ as a result of the Penguins' purported
22   breach.  If Weiss is one of those consumers, this alone disposes of his breach of
23   contract claims.  Weiss' generic allegations that "consumers frequently have to pay
24   their cell phone service providers for the receipt of such wireless calls" and that
25   charges *might* be incurred *where applicable*, only reinforce the uncertain and
26   speculative nature of these allegations of supposed harm.  *See Automatic Poultry*
27   *Feeder, supra,* 213 Cal. App. 2d at 516.  As Weiss also has not met this element of his
28   breach of contract cause of action, the entire claim fails and should be dismissed.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

**C.   Weiss Fails To Plead Facts Supporting A Claim Under The TCPA.**

The following elements must be plead in order to state a claim for violation of the Telephone Consumer Protection Act ("TCPA"):  (1) a "call" was made; (2) using an "automatic telephone dialing system"; (3) the number called was assigned to a cellular telephone service; and (4) the "call" was made without the "prior express consent" of the receiving party.  *Pimental v. Google, Inc.*, 2012 WL 691784, at *2 (N.D. Cal. 2012); 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).  "Express consent is '[c]onsent that is clearly and unmistakably stated.'"  *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law Dictionary 323 (8th ed. 2004)).   No such claim exists here.

**1.   Weiss' Claim for Violation of the Telephone Consumer Protection Act Fails Because Weiss Expressly Consented to Receive All of the Texts He Was Sent.**

Where, as here, a plaintiff's complaint raises the elements of an affirmative defense – such as prior express consent in a TCPA case - it is appropriate for dismissal by a Rule 12(b)(6) motion.  *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910 (2007) ("An affirmative defense may not be raised in a Rule 12(b)(6) motion unless the defense appears from the face of the complaint."); *see also Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."); *Shupe v. JP Morgan Chase Bank of Arizona,* 2012 WL 1344820, at *3, 5 (D. Ariz. 2012) ("Defendant can demonstrate prior express consent through Plaintiffs' allegations. . . ."); *Thrasher-Lyon v. Illinois Farmers Insurance Co.,* 2012 WL 983774, at *3 (N.D. Ill. March 20, 2012) ("Nonetheless, where a plaintiff's complaint 'sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.'").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

In the instant case, Weiss' Complaint not only raises the issue of express consent, but *specifically concedes* that Weiss consented to the Terms, meaning – as shown above – that he consented to receive *both* alerts "after every game" played by the Penguins and, in addition, up to three promotional messages per week from the team or its affiliates.  Compl. ¶¶ 37, 39 (Alleging that "[i]n order to receive text message alerts from Defendant, Plaintiff . . . [was] required to assent to Defendant's terms and conditions" and that Weiss and the putative class members "register[ed] to receive Defendant's text message alerts and provid[ed] their cellular telephone numbers to do so."); *see also* ¶ 18 ("On or about March 11, 2012, Plaintiff subscribed to receive a maximum of three text message alerts per week from Defendant by texting the word "PENS" from his cellular telephone to Defendant's short code, 32623.").  While Weiss alleges that the Penguins "made commercial text message calls *in excess of the authorized number*" which were made "*without the prior express consent* of Plaintiff and the other members of the Class" [*id.* ¶¶ 32-33 (emphasis added)], in fact the scope of Weiss' consent was broader than he chooses to acknowledge in his Complaint.

Indeed, the scope of Weiss' consent, as set forth in the judicially-noticeable Terms, included alerts via text after every game, *plus* up to three additional promotional messages via text per week.  RJN, Exh. A ("Want to stay connected with the Pens at all times? . . .  Alerts go out *after every game*. . . .*  * . . . By subscribing, you consent to receiving, from time to time, *further text messages* from us which may include offers from us, our affiliates and partners. . . .  Maximum of 3 messages a week.") (emphasis added).  Thus, Weiss cannot reasonably assert that the fourth and fifth messages he allegedly received between March 11-17 and the fourth message he allegedly received during the week of March 18-24 were sent without his consent.

The consent issue determined in *Gutierrez v. Barclays Group*, 2011 WL 579238 (S.D. Cal. 2011), is similar to that presented here and provides guidance as to how the Court should rule in this case.  The plaintiffs conceded that one of them, Ramon

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Gutierrez, provided prior express consent to call his cellular telephone number by listing it on an on-line application for a credit card. *Id*. at *2. Mr. Gutierrez had also listed his wife's cell phone number on the application. *Id*. Although the plaintiffs disputed that Mrs. Gutierrez gave prior express consent for the use of her number, their deposition testimony established that Mr. Gutierrez was authorized to provide his wife's cell phone number to credit card companies. *Id*. at *2-3.

Plaintiffs argued that Mr. Gutierrez could not consent to the use of Mrs. Gutierrez's cell phone number on her behalf. *Id*. at *3. Relying on law in the criminal context, the Court found that the evidence established it was an "undisputed fact[]" that "Mr. Gutierrez possessed 'common authority' over his wife's cellular telephone such that he could give Defendant 'prior express consent' for its use of her cellular number." *Id*. The court concluded, "that is precisely what happened when Mr. Gutierrez listed her number on the account application." *Id*.8 The plaintiffs in *Gutierrez* thus conceded the *fact* of consent, at least as to Mr. Gutierrez, but attempted – unsuccessfully – to use a fundamentally flawed distortion of the facts to dispute the *scope* of consent.

Returning to the present case, Weiss likewise attempts to qualify the scope of his consent. But Weiss' consent speaks for itself. Weiss's attempt to collapse his clear consent to both parts of the Mobile Club program - unlimited game alerts and limited promotional messages - into a limited consent is little more than an awkward effort to manufacture a TCPA claim where none exists. That is a misuse of this consumer protection statute. Weiss expressly consented to receive more than three texts during any week in which the Penguins played a game. *See* RJN, Exh. A. The Court in *Gutierrez* prohibited the plaintiffs from qualifying their consent on the basis

---

8 Although the Court in *Gutierrez* considered deposition testimony in deciding a motion for summary judgment in the Defendant's favor, here resort to extrinsic evidence is unnecessary because the scope of Weiss' consent can be determined from consideration of the judicially-noticeable Terms. Thus, it is appropriate for this Court to determine this issue on a Rule 12(b)(6) Motion to Dismiss.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-109784530.13

1  of who could consent when the record clearly demonstrated that the scope of their

2  consent was not so limited.  The same should be the case here.  Weiss admits that he

3  chose to opt into the Pens Mobile Club program and thus consented to join the

4  program on its terms.  Now, where it suits him in asserting a TCPA cause of action, he

5  attempts to carve back the scope of his consent to claim that any text messages he

6  received in excess of three per week were beyond his consent.  Because Weiss'

7  conceded express consent encompasses all nine of the text messages the Penguins

8  purportedly sent to Weiss, however, he has not stated a violation of the TCPA.

9  ## V.   CONCLUSION

10     For the foregoing reasons, as a matter of law, Weiss' Complaint fails to state

11  any claim upon which relief can be granted against the Penguins.  Further, Weiss

12  cannot plead around his admissions, and the judicially noticeable Penguins game

13  schedule, to add any facts to cure the deficiencies in the Complaint.  Amendment

14  would thus be a futile exercise.  Accordingly, the Complaint should be dismissed in its

15  entirety, with prejudice.

16

17  DATED:  July 26, 2012

                                   REED SMITH LLP
18                                 Roxanne M. Wilson
                                   Jack R. Nelson
19                                 Christine M. Neuharth
                                   Nabil A. Bisharat

20

21                           By:    /S/ Roxanne M. Wilson
                                   Roxanne M. Wilson
22                                 Attorneys for Defendant
                                   Pittsburgh Penguins LP

23

24

25

26

27

28

US_ACTIVE-109784530.13